## Shotts & Company, to Use of T. M. Arnold, *v.* Agnew, and Barnett, Terre-Tenant, Appellants.

*Judgments C. P.—Transfer to another county—Validity.*

The judgment of a court of common pleas may be transferred from a county in which it is entered to any other county of the Commonwealth by filing of record in the prothonotary's office of such county a certified copy of the whole record in the case and docketing it therein.    The fact that such a judgment is more than five years old does not affect its validity or legality.    It is still presumed to be due and unpaid and is a valid and subsisting judgment.    Its only disability is that a writ of fieri facias cannot be issued upon it until revived by a writ of scire facias quare executionem non.

Under the provisions of the Act of April 16, 1840, P. L. 410, there is no requirement that a judgment, in order to be transferred to another county, must be less than 5 years old or be a lien against real estate or be ripe for execution.    The effect of the transfer is to give the judgment a new lien, and the force and effect of such lien are to be those of a judgment entered in the county to which transfer is made and the life of the lien must begin with the entry of the transfer.

A rule to set aside a writ of fieri facias entered on a transferred judgment is properly discharged, where the evidence shows that the lien of the judgment was properly revived by the necessary

writs, and that the terre-tenant was charged with notice of it when he took the conveyance from the vendor.

Argued April 11, 1923.   Appeal, No. 90, April T., 1923, by terre-tenant, from judgment of C. P. Clarion Co , C. D. Dec. T., 1915, No. 79, and E. D. May T., 1922, No. 3, discharging rule to set aside writ of fieri facias, in case of R. W. Shotts & Company, to Use of T. M. Arnold v. W. Mc. Agnew, and A. B. Barnett, Terre-Tenant.  Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Rule to set aside writ of fieri facias entered on transferred judgment.  Before SLOAN, P. J.

The facts are stated in the opinion of the Superior Court.

The court discharged the rule.  Defendant appealed.

*Error assigned,* among others, was the order of the court.

*George F. Whitmer,* for appellant.

*W. J. Geary,* for appellee.

OPINION BY KELLER, J., July 12, 1923 :

On July 12, 1893, R. W. Shotts & Co. entered a judgment in Forest County against W. Mc. Agnew to August Term, 1893, No. 34, for $92.15 on a judgment note, waiving inquisition, etc.   It does not appear that Agnew owned any lands in Forest County upon which it became a lien.   Execution was issued upon this judgment the same day and certain personal property levied upon and sold, realizing only the sheriff's costs, and leaving nothing to apply on the judgment.

On October 21, 1910, an exemplified copy of the record of this judgment was filed and docketed, under the Act of April 16, 1840, P. L. 410, in Clarion County, where

the defendant owned real estate, to December Term, 1910, No. 125.

On October 2, 1915, a writ of scire facias was issued on the judgment thus obtained in Clarion County and service thereof was accepted by the defendant on October 7, 1915. Judgment was duly entered therein against the defendant on September 28, 1920, for $242.35.

On November 12, 1917, the defendant, Agnew, conveyed the tract of land which he owned in Clarion County to A. B. Barnett, the appellant. The record does not show when the deed was placed on record.

On June 14, 1920, an alias scire facias was issued on the judgment in Clarion County against the defendant Agnew with notice to Barnett, terre tenant, and on June 1, 1922, a pluries writ of scire facias was issued against the defendant and terre-tenant, which was duly served on the terre-tenant on June 12, 1922.

In April, 1922, a writ of fieri facias was issued on the judgment obtained on the scire facias (September 28, 1920) and the real estate conveyed by Agnew to Barnett was levied upon and advertised for sale.

Thereupon Barnett, the terre-tenant, obtained a rule to show cause why the writ of fieri facias should not be set aside, and also filed an affidavit of defense to the pluries writ of scire facias setting up the foregoing facts in defense of the plaintiff's claim.

The court discharged the rule to set aside the writ of fieri facias and entered judgment against the terre-tenant on the pluries scire facias for want of a sufficient affidavit of defense. The terre-tenant appealed.

The disposition of this appeal depends on whether the filing of the exemplified record of the judgment in Clarion County created a lien upon the lands of the defendant, Agnew, in said county. If it did, the judgment of the court below must be affirmed. For if a lien on Agnew's lands on October 21, 1910, the mere issuing of a writ of scire facias thereon within five years, on October 2, 1915, revived and continued the lien for five years from

that date: Davidson v. Thornton, 7 Pa. 128, 132; and the appellant was affected with notice of the record of the judgment encumbering the land when he received his deed from Agnew on November 12, 1917, and took the land subject to the lien of the judgment. And this lien was duly continued and kept in force against the land by the due prosecution of the scire facias and obtaining judgment thereon on September 28, 1920, within five years of its issuance: Silverthorn v. Townsend, 37 Pa. 263; and by the scire facias against the terre-tenant within five years of the conveyance to him: Act of April 16, 1849, P. L. 663; Uhler v. Moses, 200 Pa. 498.

The Act of April 16, 1840, supra, provides that any judgment of a court of common pleas may be transferred from the county in which it is entered to any other county in this Commonwealth by filing of record in the prothonotary's office of such county a certified copy of the whole record in the case and docketing it therein, "and the case may then be proceeded in, and the judgment and costs collected by executions, bill of discovery, or attachment, as prescribed by the act entitled 'An act relating to executions,' passed the 16th day of June, 1836; and as to lien, revivals, executions and so forth, it shall have the same force and effect, and no other, as if the judgment had been entered......in the same court to which it may thus be transferred."

The validity of the original judgment cannot be attacked elsewhere than in the county in which it was entered; and if annulled or set aside there, the judgment on the exemplified record falls with it: Brandt's App., 16 Pa. 343.

The plaintiff, then, had on October 21, 1910, a valid and unquestioned judgment against Agnew, the defendant, in Forest County. It was not a lien on any land, but there is no evidence in the record that it ever was, or that Agnew ever owned any lands in Forest County. The fact that it was seventeen years old did not affect its validity or legality; it was still presumed

to be due and unpaid; it was a valid and subsisting judgment. Its only disability was that a writ of fieri facias could not be issued upon it until revived by a writ of scire facias quare executionem non (Act of April 16, 1845, P. L. 538, section 4; Act of May 19, 1887, P. L. 132.) But this provision of the law affected only its enforcement by execution, not its existence or validity. It was none the less a judgment within the language of the Act of 1840: McCahan v. Elliott, 103 Pa. 634; Brown's App., 91 Pa. 485; Bryan v. Jones & Laughlin Steel Co., 238 Pa. 191. Even without such revival it was sufficient to support a writ of attachment ad lev. deb.: Gemmill v. Butler, 4 Pa. 232; Bohan v. Reap, 7 Pa. Superior Ct. 167.

The Act of 1840 contains no requirement that judgments, in order to be transferred to another county, must be less than five years old, or be liens against real estate, or be ripe for execution; it simply says, "Any judgments." And this has been construed to mean just what it says, and embrace all judgments less than twenty years old (and therefore not presumed to be paid), irrespective of whether they are liens on real estate or immediately enforceable by execution. Thus in James v. Jarrett, 17 Pa. 370, the judgment was not transferred from Montgomery County to Philadelphia County until twenty-two years after it was entered and seventeen years after the last revival. In Kittanning Ins. Co. v. Scott, 101 Pa. 449, a judgment entered in Armstrong County was opened and defendant, Scott, let into a defense; and yet it was held that it nevertheless remained a judgment within the Act of 1840, and that an exemplified record of it might be filed in Butler County and a lien obtained on the defendants' lands in that county. The Supreme Court said (p. 451) "For all purposes, except execution against Scott, it remained a valid judgment against both defendants in that county, and pursuant to the provisions of the Act of 1840 it was transferred to the Court of Common Pleas of Butler County......The act declares

that a judgment thus transferred and docketed, shall have the same force and effect as to lien, revival, execution, etc., as if it had been entered in the court to which it is transferred." So, in this case, for all purposes except immediate execution against the defendant, the judgment in Forest County was a valid judgment against the defendant and might legally be transferred in accordance with the Act of 1840 to Clarion County. The only disability attaching to it in Forest County was that execution could not be issued upon it without a writ of scire facias; and under the decision in Beck v. Church, 113 Pa. 200, this disability followed its transfer to Clarion County, and prevented the issuing of execution there until after revival of the judgment; which was done in this case before the writ of fieri facias was issued. The purpose of this provision is that after the lapse of five years the defendant must be warned and have his day in-court to show payment before the judgment may be enforced by execution; and this may be done either in the original county before transfer, or in the second county after transfer: Beck v. Church, supra.

This inability to issue execution upon a judgment, however, did not interfere with any lien it might have in the first county, or prevent its acquiring a lien in the second county: Kittanning Ins. Co. v. Scott, supra. When the Act of 1840 was passed a judgment was a lien on lands for five years (Act of March 26, 1827, 9 Sm. L. 303), but execution could not be issued upon it after a year and a day unless a scire facias quare executionem non was first issued (Act of June 16, 1836, P. L. 761, sections 1 and 2). The force and effect of such a judgment, (over a year and a day old but less than five years old), were not affected by its disability to support an immediate execution; but only its enforcement; and it could be transferred by exemplification to any other county, and acquire a new lien there, but could not be enforced by execution there, until opportunity had been

given the defendant to show cause, if any he had, why execution should not issue.

What effect, then, did the transfer of the judgment from Forest County to Clarion County have upon the lands of the defendant in Clarion County? The answer is given in Knauss's App., 49 Pa. 419, in conformity with the words of the Act of 1840: It acquired a lien upon such lands from the date of entry, with the same force and effect as if it had been entered there as a judgment; and this lien continued as a new graft for five years, and might be revived and kept in force thereafter without regard to the lien of the original judgment.

In Knauss's Appeal, supra, a judgment was obtained in Lehigh County on April 1, 1857, and on January 14, 1859, a certified record thereof was filed and docketed in Northampton County. On June 3, 1862, a fieri facias was issued in Northampton County on this transferred judgment and the defendant's lands levied upon and condemned. A purchaser of the land from the defendant moved to set aside the writ on the ground that the lien of the judgment in Northampton County expired on April 1, 1862, five years after the entry of the original judgment in Lehigh County, it not having been revived there. The Supreme Court ruled otherwise, and in the opinion (by AGNEW, J.) stated as a consequence of such a proposition the very case now before us. Judge AGNEW said: "It needs not the case of Hays's App., 8 Barr [182] to inform us that a judgment transferred from Lehigh begins its lien upon lands in Northampton only when it is entered there. But we are asked to say that it expires in five years from the date of the original judgment in Lehigh, *and as a sequence, if more than five years old at the time of the transfer, it can acquire no lien in Northampton except by revival.*" He then continues: "What was the purpose of the Act of 1840? Clearly it was to give a new remedy—something that did not pertain to the original judgment. This was a new lien where none before had existed, and a new power of

execution which had not belonged to it. The transferred judgment was therefore to have a new form and effect, which the original had not, by reason of the territorial limit. It becomes the origin of a fresh lien, and the source of new executions and different revivals not pertaining to the original, but acquired by the transfer. ......The Act of 1840 gives to the transferred judgment at the time of entry the same force and effect as if it had been entered there. Lien which attaches at the moment of entry is as clearly due to this force and effect as the revival, or execution itself......Though foreign in its birth, it is to be so completely naturalized by its entry that it shall have all the privileges of a judgment having its origin there as to lien, revival, and execution. But there is nothing in this contradicting the preceding clause, that the proceeding to enforce collection shall be according to the Act of 1836, and therefore if the debt is presumed to be paid, so as to require a scire facias, it must be revived before proceeding to execution. The lien acquired is merely a new property following the transfer. It is the fruit of the graft, and not of the stock, and its only connection with the original judgment is in the support which that judgment, as the parent stem, gives to the judgment from which this new lien derives its life. Then, as by the express words of the law, the force and effect of the lien are to be those of a judgment entered in the county to which the transfer is made, the entry, which is the birth of a new life, must also begin the term of its existence.

The idea that the Act of 1840 repeals the Act of 1827 as to the term of the lien, is unfounded. It adds no new lease of life to the lien of the original judgment: Hays' App., 8 Barr 182. It creates an entirely new lien, governed by its own terms, and the Act of 1827 applies to it its appropriate force, by counting its term from the date of its own entry."

The status of a judgment entered on an exemplified record from another county is the same as that of a

judgment entered in the common pleas on a transcript of a judgment obtained before a justice of the peace: Doerr v. Graybill, 24 Pa. Superior Ct. 321, 324. Such a transcript of a judgment before a justice, more than five years old, may be filed in the prothonotary's office under the Acts of March 20, 1810, 5 Sm. L. 161, section 10, and June 24, 1885, P. L. 160, and acquire a lien on the defendant's real estate as soon as entered on the prothonotary's docket, although no execution can be issued upon it until revived by scire facias issued out of the common pleas, with opportunity for the defendant to show payment or other cause why execution should not issue: Brannan v. Kelley, 8 S. & R. 479; Diamond v. Tobias, 12 Pa. 312; Smith v. Wehrly, 157 Pa. 407, 413.

We are of opinion that under the reasoning of Knauss's App., supra, the lien which the transferred judgment in this case acquired in Clarion County at the time of its entry there on October 21, 1910, was not affected by the fact that the original judgment in Forest County was then over five years old and could not support a writ of execution without revival by scire facias; that this affected only the enforcement of the judgment and required the issue of a writ of scire facias before a fieri facias could go out: Beck v. Church, supra. This requirement was complied with and judgment obtained on the scire facias before execution was issued. The judgment being a lien on Agnew's lands, Barnett was charged with notice of it when he took his conveyance from Agnew, and the lien having been regularly revived so as to bind the terre-tenant, the action of the court below in entering judgment against the terre-tenant was right and the judgment must be affirmed.

Judgment affirmed.