## Paul Bohan v. John Reap, Appellant.

*Attachment execution may issue without precedent sci. fa. to revive.*

An attachment execution may issue on a judgment which has lost its lien upon real estate without issue of scire facias to revive the judgment on which it is issued. An attachment execution is not such an execution as is contemplated by the Act of May 19, 1887, P. L. 132.

Argued Jan. 10, 1898. Appeal, No. 7, Jan. T., 1898, by defendant, from order of C. P. Luzerne Co., April T., 1877, No. 1009, discharging rule to quash attachment execution. Before RICE, P. J., BEAVER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Rule to quash attachment execution. Before LYNCH, J.

The facts sufficiently appear from the following opinion of the court below:

Judgment in assumpsit was entered July 17, 1877, for $973.14. The next step in the case was taken October 13, 1896, when the plaintiff caused execution attachment with clause of scire facias to the Continental Fire Insurance Company, garnishee,

to be issued and served on the garnishee October 14; who answered January 7, 1897, that there was due defendant $550 upon a policy of insurance, and that he had claimed the benefit of the law exempting property from levy and sale on execution, and on the defendant November 25, 1896.

This rule was granted on the 17th of December, which was therefore in time: Kohler v. Thorn, 154 Pa. 180.

The reason assigned for quashing the writ is that, a scire facias to revive the judgment was not issued at the same time the attachment was as provided by the Act of May 19, 1887, P. L. 132.

At common law, execution must have been sued out within a year and a day after the judgment was entered, otherwise the court presumes prima facie that the judgment was satisfied. But after a delay of a year and a day the plaintiff could have a scire facias under the Statute of West. 11, c. 45, to compel the defendant to show cause why the judgment should not be revived, and execution had against him, to which defendant might plead such matter as he had to allege in that behalf; or the plaintiff might bring an action of debt on the judgment, which was only the common law method of revival; and on obtaining judgment in either of these proceedings, the plaintiff might issue execution thereon, in the same manner as on the original judgment.

The rule as to a year and a day was the law in this state down to the act of June 16, 1836.

By the Act of April 16, 1845, P. L. 538, the period within which execution can be issued without a previous revival of the judgment, is extended to five years.

Ogilsby v. Lee, 7 W. & S. 444 (1844), decided that a writ of attachment in the nature of an execution may issue after the expiration of a year and a day. SARGENT, J., said, " To this summons it is clear that the defendant may appear and become a party, and plead payment, or any other plea which he might take advantage of, on a scire facias post annum et diem. To require a previous sci. fa. to issue after the lapse of a year and a day before a writ of attachment could be taken out, would, therefore, seem to be superfluous, not tending to secure any purpose of justice, but leading to unnecessary expense and delay."

This was followed and approved in Gemmill v. Butler, 4 Pa.

232 (1845), where it is said : "But the panacea which restored that case will cure this also; in the attachment process the defendant has a day in court, in which he can have full power to make any defense that he could make in a scire facias."

Swanger v. Snyder, 50 Pa. 218 (1865), STRONG, J., in speaking of the difference between attachment executions and executions, said : "The act of assembly does not in words apply to attachments, and they do not seem to be within its spirit when the defendant has an opportunity to be heard in opposition to the claim of the attaching creditor."

Thus it appears that prior to the act of 1887, attachment proceedings were not regarded by the court as executions within the meaning of the acts of 1836 and 1845.

The act of 1887 does not in words repeal any prior act, but allows executions sued out, although the judgment may have lost its lien upon real estate, without a previous writ of scire facias to revive, provided it shall not issue after the lapse of twenty years from the maturity of the judgment, and that at the same time execution is issued " a scire facias shall be issued to revive the judgment." The language is not a whit stronger in this act than is that of the previous act above referred to.

Again, the title of the act of 1887 seems to indicate that the legislature did not intend the act should apply to attachments. It is " An act authorizing the issuing of executions upon judgments, for the purpose of selling personal property of the debtor, after five years from the entry of such judgment, without a previous writ of scire facias to revive the same."

An attachment execution is not issued for the purpose of selling personal property. Under it the sheriff has no power to sell, he simply warns, and attaches the property of the defendant.

Ogilsby v. Lee, does not appear to have been criticised, qualified, limited or overruled by the Supreme Court, and therefore must be accepted as the law on the question there ruled; and it was there said that in attachments the defendant may plead payment or any other plea. Why then does not the defendant in this proceeding stand as well as if a sci. fa. to revive issued with the attachment?

There is nothing in the act of 1887 which deprives him of this right, why, then, is it essential to first issue a scire facias

to revive the judgment when the legal rights of all parties to the action can be adjusted without such writ, expense and delay?

The act of 1836 provides that after the expiration of five years no execution shall be issued unless the defendant shall first be warned by scire facias, that of 1887 that at the same time execution is issued a scire facias shall be issued to revive, since attachment without previous warning having been sustained under the earlier act there appears to be no valid reason why this writ may not be good.

This court has the highest respect for the decision of Judge ARNOLD, who in Sweeting v. Wanamaker, 4 D. R. 246, held that since the act of 1887, "an attachment execution on a judgment more than five years old must be accompanied with a scire facias to revive the judgment" but in construing these acts we are forced to follow what appears to us to be a sound but different interpretation.

The court below discharged the rule to quash the attachment execution. Defendant appealed.

*Error assigned* among others was discharging the rule to quash the attachment.

D. L. O'Neill, with him J. F. O'Neill, for appellant.—The Acts of June 16, 1836, P. L. 755, and May 19, 1887, P. L. 132, provide that execution cannot be issued upon any judgment over five years old unless scire facias to revive the same shall have been previously issued.

The attachment execution was within the meaning of the Act of April 9, 1849, P. L. 533: Strause's Exrs. v. Becker, 38 Pa. 190; Strause's Exrs. v. Becker, 44 Pa. 206.

The act has been properly interpreted by ARNOLD, J., in Sweeting v. Wanamaker, 4 Dist. Rep. 246, a case on all fours with the one at bar.

C. Frank Bohan, with him Charles P. Bohan, for appellee.— The decree of the court below brought up for review in this case is an interlocutory judgment only, and an appeal does not lie therefrom: Pearson's Practice Supreme Court of Pa. secs. 27 and 28; Phila. v. Christman, 6 Pa. Superior Ct. 29.

The Act of June 16, 1836, P. L. 755, was construed not to include attachment executions: Gemmill v. Butler, 4 Pa. 232; Ogilsby v. Lee, 7 W. & S. 444.

The act of 1887, supra, is to be strictly construed, and is to be expounded as near to the former practice as can be: Smith Wehrly, 157 Pa. 407.

OPINION BY RICE, P. J., April 18, 1898:

This is an appeal from an order refusing to quash an attachment execution upon the motion of the defendant.   Passing the question whether an appeal lies from such an order prior to the entry of final judgment in the attachment proceeding, we find no error in the ruling of the court below.

Section 2 of the Act of June 16, 1836, P. L. 755, provided that no execution should issue after the expiration of a year and a day from the first day of the term in which judgment was entered, or, if there was a stay of execution, from the expiration of such stay, unless the party against whom it was rendered should be first warned by writ of scire facias to show cause why an execution should not issue.   This was amended by section 4 of the Act of April 16, 1845, P. L. 538, which provided that "it shall not be deemed error to issue any writ of execution on a judgment, in any court, which has not been revived within a year and a day, if the same have been revived within five years."

A difference of opinion existed in the courts of common pleas as to whether it was lawful under any circumstances to issue a fi. fa. on a judgment more than five years old which had not been revived.   Some of the courts held that no change was made in the practice that had grown up under the common law, and, therefore, that it was lawful, if a previous fi. fa. had been issued within five years (1 T. & H. Prac. secs. 1043, 2073), while others held that it was not: Comstock v. Kilchenstein, 14 W. N. 388.   It is altogether probable, as Judge ARNOLD says in Sweeting v. Wanamaker, 4 Dist. Rep. 246, that this dispute was one of the considerations which led to the passage of the Act of May 19, 1887, P. L. 132.   Another purpose, more plainly apparent, was to meet objections that had been raised to the issuing of a fi. fa. upon a judgment more than five years old prior to the entry of judgment upon the sci. fa. to revive,

(Harmony B. Assn. v. Berger, 14 W. N. 499), and to permit both writs to go out at the same time when the purpose was to sell personal property only. But so far as attachment executions are concerned the act gives no right which was not recognized before, and we are unable to conclude that the intention was to curtail any such right or to regulate its exercise.

In the first place the language of the act is not more imperative than that of the act of 1836 or of the act of 1845, and upon the latter acts we have authoritative decisions, which so far as I know have never been questioned, holding that an attachment execution may issue after the expiration of the specified period, notwithstanding there was no previous revival of the judgment: Ogilsby v. Lee, 7 W. & S. 444; Gemmill v. Butler, 4 Pa. 232. And see Swanger v. Snyder, 50 Pa. 218. These cases are very fully abstracted in the opinion rendered by the learned judge of the court below, and we need not refer to them further, except to say that the reasoning of the decisions is equally pertinent and conclusive in construing the act of 1887.

In the second place the language of the provision that " in case the defendant . . . . in said writs file an affidavit alleging a just and legal defense against the revival of said judgment it shall be lawful for the court or a judge thereof in vacation to stay the writ of fieri facias," etc. is not without significance. It is some evidence that the only writ which the legislature had in mind was the writ of fieri facias. True, it was unnecessary to provide specially for a stay in the case of a writ of attachment, but this was because, (as was said in Ogilsby v. Lee), the defendant may appear and become a party, and plead payment or any other plea which he might take advantage of upon a sci. fa. post annum et diem. Hence the argument from the exclusive reference to the writ of fi. fa. is not weakened but rather strengthened. It is not to be supposed that the legislature intended to give the defendant two opportunities to show cause why the plaintiff should not have the advantage of his judgment.

Again, the title of the act only gives notice of legislation concerning executions issued " for the purpose of selling personal property of the debtor," and, surely it cannot be contended that legislation concerning executions generally would be permissible under such a restrictive title. An attachment, it is

true, is execution process, but it is not accurate to speak of it as an execution for the sale of personal property. As the learned judge of the common pleas well says : " Under it the sheriff has no power to sell, he simply warns, and attaches the property of the defendant." It is not to be presumed that the legislature intended to legislate upon a subject not clearly expressed in the title ; hence it is that the title may always be looked to for aid in the construction of the statute. " However it was in England, where the title is held to be no part of a statute, indeed was commonly framed by the clerk of Parliament after the bill had passed, without any vote being taken upon it, certainly, since the first amendment of the constitution adopted in 1864, art. XI, sec. 8, it is now necessarily a part of the act, and a very important guide to its right construction : " Eby's Appeal, 70 Pa. 311. " The subject of the act is expressed in the title ; this is essential ; the title is a part of the act and aids, if need be, in its construction ; and if there were any provision foreign to the subject named it would be void : " Halderman's Appeal, 104 Pa. 251. " The title of an act is part of it ; it limits its scope, and is properly used in interpreting its words : " Perkins v. Philadelphia, 156 Pa. 554, citing Pa. R. R. Co. v. Riblet, 66 Pa. 164. See further, Sanderson's Validity of Statutes, pp. 6–13, and cases there cited. A legislative intent to violate the constitution is never to be assumed, if the language of the statute can be satisfied by a contrary construction, and we are clearly of opinion that it can be satisfied in the present instance by restricting it to writs for the sale of personal property and leaving the practice, so far as attachment executions are concerned, undisturbed. The manifest difference between such writ and the writ provided for the enforcement of judgments against school districts prevents any analogy being drawn between the present case and O'Donnell v. Cass School Dist., 133 Pa. 162. That writ is an imperative command, while under an attachment execution the defendant has an opportunity to make any defense he could to a sci. fa. Neither the decision itself, nor anything that is said in the opinion conflicts in the slightest degree with the rulings in Ogilsby v. Lee, and Gemmill v. Butler.

For the foregoing reasons, in connection with those stated in the able opinion of the learned judge of the court below, we hold, that there was no irregularity in the issuing of the attachment which entitled the defendant to have it quashed.

The order discharging the rule to show cause why the writ of attachment should not be quashed is affirmed, and the appellant is directed to pay the costs.